IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 21, 2026

FILED
02/11/2026
Clerk of the
Appellate Courts

## DEXTER PARKER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 2019-CR-45680      Robert Thomas Carter, Judge**

————————————————————

## No. M2025-00102-CCA-R3-PC

————————————————————

The pro se Petitioner, Dexter Parker, appeals the denial of his petition for post-conviction relief, arguing that he received the ineffective assistance of trial counsel. Based on our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

Dexter Parker, Pro Se (on appeal); and Amanda Gentry, Nashville, Tennessee (at hearing), for the Petitioner, Dexter Parker.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Craig Northcott, District Attorney General; and Jennifer Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In 2013, the Petitioner, indicted for attempted first degree murder, aggravated domestic assault, and especially aggravated kidnapping, was convicted by a Coffee County jury of attempted second degree murder, aggravated assault, and especially aggravated kidnapping. *State v. Parker*, No. M2017-00477-CCA-R3-CD, 2018 WL 3154342, at *1 (Tenn. Crim. App. June 26, 2018). The convictions arose from the Petitioner's preventing his live-in girlfriend from leaving their bedroom as he severely beat her and cut her repeatedly with a broken bottle. *Id.* The State's witnesses at trial included the victim, who

described the Petitioner's attack and her eventual escape from the home through a window; the neighbor who the victim approached for help, and who described the victim's naked and bloody appearance on his front porch; and the police officers who responded to the Petitioner's home to find the Petitioner rolling on the blood-soaked carpet, pointing his hand like a gun, making gun noises, and stating that there were people upstairs that would kill the officers. *Id.* at *2-4.

In his defense, the Petitioner called the following witnesses: the Petitioner's mother, who testified about the Petitioner's history of mental illness, the Petitioner's childhood history of head injuries, and the Petitioner's family history of mental illnesses; Dr. William Richie, a board certified forensic psychiatrist and assistant professor in the Department of Psychiatry at Meharry Medical College, who opined that, at the time of the attack, the Petitioner was suffering from a cocaine-induced delirium and sincerely believed that aliens had emerged from his television set and were trying to get him; and Dr. Rokeya Farooque, a psychiatrist for the Middle Tennessee Mental Health Institute ("MTMHI"), who testified that she diagnosed the Petitioner with schizophrenia, paranoid type, but was unable to connect the Petitioner's actions to his mental illness. Dr. Farooque opined that the Petitioner knew what he was doing and that there was no basis for an insanity defense. *Id.* at *5-9.

On direct appeal, the Petitioner "argue[d] that the trial court improperly excluded the conclusion of [Dr. Richie] while allowing the conclusion of [Dr. Farooque] regarding [the Petitioner's] mental state" and erred "by reinstating and amending [c]ount [t]wo of the indictment," which was amended by the trial court from aggravated domestic assault to aggravated assault. *Id.* at *1. We concluded that the Petitioner, who called Dr. Farooque as a defense witness at trial, waived appellate review of the expert testimony issue by inviting the alleged error, and that the trial court committed structural constitutional error by reinstating count two of the indictment. *Id.* at *1, 10. Accordingly, we vacated and reversed the aggravated assault conviction in count two but affirmed the convictions for attempted second degree murder and especially aggravated kidnapping, with the result that the Petitioner's effective sentence was reduced from forty-six years to thirty-eight years. *Id.* at *1, 9.

On January 14, 2019, the Petitioner filed a pro se petition for post-conviction relief in which he raised claims of prosecutorial misconduct and ineffective assistance of trial counsel, with ten different factual allegations. On appeal, the Petitioner confines himself to arguing that his trial counsel was ineffective for eliciting inculpatory testimony from Dr. Farooque; for not eliciting exculpatory testimony from Dr. Richie; for not challenging the trial court's reliance on *State v. Perry*, 13 S.W.3d 724 (Tenn. Crim. App. 1999) and Tennessee Code Annotated section 39-11-501 by arguing that the insanity defense statute was unconstitutional; for not arguing for a self-defense jury instruction; and for not moving

for a mistrial upon the trial court's amendment of the indictment. The Petitioner additionally argues that the cumulative effect of trial counsel's various deficiencies resulted in the denial of his right to effective assistance of trial counsel.

Post conviction counsel was appointed, and an evidentiary hearing was held on May 23, 2024, with trial counsel as the only witness.[1] Trial counsel, who said that he no longer practiced law, testified that he did not know how many other lawyers the Petitioner had before him but was aware that he was not the first lawyer to represent the Petitioner after the case was in circuit court. He said that the Petitioner had a history of mental illness and serious head injuries without treatment, and it quickly became apparent to him that it would be helpful for the Petitioner to undergo a mental evaluation. He stated that the Petitioner was eventually evaluated by Dr. Farooque at MTMHI, who "didn't see a link between any kind of mental health anything and what happened on the evening of the incident." He testified that he then found a private psychiatrist, Dr. Richie, to perform a second mental evaluation.

When questioned about the allegation that he elicited inculpatory testimony from Dr. Farooque at trial, trial counsel replied that he was confident he asked questions of Dr. Farooque that were intended to show that the Petitioner had "serious mental health difficulties." Trial counsel recalled that, in addition to the Petitioner's serious untreated head injuries as a child, the Petitioner had a history of calling the police on himself, that "there was talk of blue people instructing [the Petitioner] to do what he was doing on the night of the [incident]," and that there was a history of serious substance abuse by the Petitioner and the victim that predated the incident and also occurred on the night of the incident. Trial counsel testified that he assumed he questioned Dr. Farooque about those things but could not recall the specific questions he asked.

Trial counsel was also unable to remember the specific questions he asked of Dr. Richie. He was certain, however, that Dr. Richie testified about the Petitioner's history of mental illness. Trial counsel recalled that the trial court allowed Dr. Farooque "to opine on the ultimate fact of whether . . . [the Petitioner] was insane . . . at the time of the incident" but would not allow trial counsel to address that issue with Dr. Richie.[2] When asked if he recalled that the trial court relied on *State v. Perry* in excluding Dr. Richie's opinion

---

[1] Although post-conviction counsel stated at the start of the evidentiary hearing that she had found it unnecessary to file an amended petition, the record on appeal does not contain the required notice that no amended petition would be filed. *See* Tenn. Code Ann. § 40-30-107(2); Tenn. Sup. Ct. R. 28, § 6(C)(2)-(3).

[2] The insanity defense statute provides in pertinent part that "[n]o expert witness may testify as to whether the defendant was or was not insane as set forth in subsection (a). Such ultimate issue is a matter for the trier of fact alone. Tenn. Code Ann. § 39-11-501(c).

testimony on the ultimate issue, trial counsel testified that he remembered having been very upset about the trial court's ruling but could not recall the specific cases discussed at the sidebar conferences, or the specific objections he raised. However, he recalled being "animated with the judge on a few occasions throughout the trial."

Trial counsel testified that he did not remember self-defense as being an issue. He recalled that the Petitioner was alleged to have used a broken bottle to carve into the victim's body; he had no memory of any evidence that the Petitioner was defending himself from the victim's assault. Trial counsel agreed that, had there been a cognizable self-defense argument, he would have raised it.

Trial counsel testified that he argued against the trial court's amendment of the indictment after the jury had been impaneled. He acknowledged that he did not move for a mistrial. He believed, however, that he properly preserved the issue for appeal: "I made my arguments, which should be on the record in the transcript, as to how he just didn't have a basis to do it. Like, the only thing he could do is basically dismiss that count. And he did not, for whatever reason, dismiss that count."

Trial counsel testified that he "investigated the heck out of the facts." He stated that he spent a lot of time visiting with the Petitioner at the jail, a lot of time with Dr. Richie, and a lot of time at MTMHI, where he extensively reviewed the Petitioner's records.

On cross-examination, trial counsel indicated that he thought it was the State that called Dr. Farooque as a witness. He could not recall Dr. Farooque's report stating that the Petitioner's paranoia may have caused him to believe that there were other people in the room. Trial counsel also could not recall if he attempted to elicit testimony from Dr. Farooque about the Petitioner's paranoia but said it would have made sense for him to do so.

Trial counsel agreed that there was no proof to justify a good-faith request for a self-defense jury instruction. When asked if he remembered testimony that the Petitioner had a lot of the victim's blood on him but no injuries, trial counsel responded:

> So, no. This is what I remember regarding blood. I don't know whose blood was on who and whether there were injuries on him. I don't remember that part. But a thing that made it impossible for the jury to get beyond, I think in the case, the two things: Number 1, the description of him allegedly, you know, carving into her with the bottle. The second thing was probably three officers testified that when they came into the room, there was so much blood on the floor that their feet, like, sank into blood. These two things

- 4 -

Johnnie Cochran couldn't have done anything with.  Like . . . those were just two big facts. . . developed . . . that I could not get beyond.

On December 20, 2024, the post-conviction court entered an order denying the petition.  With respect to the allegation that trial counsel was ineffective for eliciting inculpatory testimony from Dr. Farooque, the post-conviction court concluded that the issue was waived due to its having been raised and determined on direct appeal, but that, notwithstanding waiver, trial counsel's tactical decision about Dr. Farooque's testimony did not prejudice the outcome of the trial.

With respect to trial counsel's failure to elicit exculpatory testimony from Dr. Richie, the post-conviction court noted the thorough job that Dr. Richie did in explaining the Petitioner's mental health history, the Petitioner's strange behavior, and "the effects of alcohol, schizophrenia and bipolar issues on [the Petitioner's] ability or inability to perceive."  The post-conviction court further noted that trial counsel sought, but was denied, permission to elicit Dr. Richie's conclusory testimony on the issue of the Petitioner's insanity.  The post-conviction court, therefore, concluded that the Petitioner failed to show neither a deficiency in trial counsel's representation nor resulting prejudice to his case based on this allegation of ineffective assistance of counsel.

As for the allegation that trial counsel was ineffective for failing to challenge the trial court's reliance on *State v. Perry* and Tennessee Code Annotated section 39-11-501 as unconstitutional, the post-conviction court noted that the statute was unchanged as of the writing of its order and had "survived previous and subsequent challenges" to its constitutionality.  The post-conviction court, therefore, concluded that trial counsel's failure to raise a constitutional challenge to the statute and the *Perry* case did not fall below the standard of reasonableness and would not have affected the outcome of the Petitioner's case.

With respect to the allegation that trial counsel was ineffective for not moving for a mistrial upon the trial court's constructive amendment of count two of the indictment, the post-conviction court found it "most likely" that a mistrial would not have been granted.  The post-conviction court also noted that the error in amending the indictment was cured by this court on direct appeal.  The post-conviction court, therefore, concluded that the Petitioner showed neither deficient performance nor prejudice to his case based on this allegation of ineffective assistance of counsel.

Finally, the post-conviction court concluded that trial counsel's failure to raise and argue self-defense was not unreasonable and did not affect the outcome of the case given that the facts did not support self-defense, and that the Petitioner was not entitled to relief under the doctrine of cumulative error.

On January 21, 2025, the Petitioner filed an untimely notice of appeal to this court.

## ANALYSIS

The State first argues, in a footnote, that the appeal should be dismissed as untimely because, although the Petitioner's certificate of service alleges that the notice of appeal was mailed on January 16 via first class United States mail, it does not allege that it was delivered to the prison mailroom or sent via certified or return-receipt mail. Rule 4 of the Tennessee Rules of Appellate Procedure provides that a notice of appeal shall be filed within thirty days after entry of the judgment from which an appeal is sought. Tenn. R. App. P. 4(a). The rules, however, provide that the notice of appeal document is not jurisdictional in criminal cases "and the timely filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "In determining whether waiver is appropriate, this [c]ourt will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005). Because the Petitioner is pro se and missed the filing deadline by such a short period of time, we have elected to waive the timely filing of the notice of appeal.

We agree with the State, however, that the post-conviction court did not err in denying post-conviction relief. Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted). However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *Id.* (first citing *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); and then citing *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013)). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *Id.* at 400 (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)).

- 6 -

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (first citing *Strickland*, 466 U.S. at 688; and then citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We conclude that the record does not preponderate against the findings and conclusions of the post-conviction court. The trial transcript shows that trial counsel, faced with difficult facts, did a thorough job of attempting to impeach the State's witnesses and eliciting testimony about the Petitioner's mental health issues, drug and alcohol use, and

strange behavior with police and at the hospital on the night of the incident. Although there was evidence that the victim hit the Petitioner with a drawer during the attack, there was nothing to warrant a self-defense jury instruction. Thus, trial counsel was not deficient for not requesting a jury instruction on self-defense.

The trial transcript further reflects that trial counsel argued at some length that Dr. Richie should be allowed to testify regarding his conclusion that the Petitioner was insane and/or that the Petitioner's mental disease or defect prevented the Petitioner from appreciating the wrongfulness of his acts but was prevented from doing so by the trial court. Following the trial court's ruling, trial counsel engaged in extensive examination of Dr. Richie, eliciting testimony about, among other things: the Petitioner's mental illness; the Petitioner's history of untreated head trauma, including head trauma the Petitioner sustained a month prior to the incident in an attack by three or four men; the Petitioner's drug and alcohol use; the Petitioner's repeated suicide attempts; and the disorientation the Petitioner exhibited at the hospital where he was taken following his arrest.

On appeal, the Petitioner cites this court's 2014 opinion in *Stave v. Colvett*, 481 S.W.3d 172 (Tenn. Crim. App. 2014), a case in which the defendant's expert testified that the defendant was unable to appreciate the nature and wrongfulness of his acts at the time he committed a murder, in support of his contention that trial counsel should have argued that the insanity defense statute was unconstitutional. In the Petitioner's interpretation, this court "ipso facto abrogated its prior holding [in *Perry*] by failing to in any way conclude that [Colvett's defense expert]'s testimony ran afoul of the permissible limitations clearly imposed by *Perry*."

We agree with the State that the Petitioner's reliance on *Colvett* is misplaced. As the State points out, the issue in *Colvett* was whether the jury erred in rejecting the defendant's insanity defense; whether the defense expert's opinion testimony complied with the insanity defense statute was not raised as an issue on appeal. *Colvett*, 481 S.W.3d at 176.

The Petitioner also argues that the post-conviction court erred in denying relief because trial counsel's decision to call Dr. Farooque as a defense witness was not a tactical one but instead a "colossal mistake" that decimated the Petitioner's insanity defense. In support, the Petitioner cites portions of this court's direct appeal opinion in which we discussed trial counsel's having invited the alleged error regarding Dr. Farooque's opinion on the Petitioner's insanity, as well as trial counsel's evidentiary hearing testimony that, according to the Petitioner, "disabuses any reasonable person of any notion that there was some degree of strategic thinking or reasoning involved with [trial counsel's] eliciting inculpatory testimony from Dr. Farooque."

Trial counsel's evidentiary hearing testimony showed that his memory on this topic was faulty. However, the trial transcript reveals that, during closing argument, trial counsel explained that he had made a tactical decision to call Dr. Farooque as a witness. Trial counsel acknowledged to the jury that Dr. Farooque had not turned out to be his "best friend" as a witness but argued that Dr. Farooque's testimony about the Petitioner's serious mental illness, cocaine and alcohol use, and the fact that the Petitioner was not on prescription medication at the time of the incident, combined with the proof of the Petitioner's "crazy" behavior and Dr. Richie's testimony, supported the jury's finding the Petitioner either not guilty by reason of insanity or incapable of forming the requisite mens rea for the offenses.

Although the jury did not return the verdicts that the Petitioner would have liked, it found the Petitioner guilty of the lesser-included offense of attempted second degree murder in count one. Moreover, as noted by the post-conviction court, trial counsel's having preserved the amendment of the indictment as an issue for appeal resulted in the Petitioner's conviction in count two ultimately being reversed and vacated. The record does not preponderate against the post-conviction court's finding that the Petitioner failed to meet his burden of demonstrating that he was denied the effective assistance of counsel or to show that he is entitled to relief under the doctrine of cumulative error. We, therefore, affirm the denial of the petition for post-conviction relief.

## CONCLUSION

Based on our review, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE